**No. 25-60099**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARSHAND CRISLER,

Defendant - Appellant

---

**On Appeal from**

United States District Court for the Southern District of Mississippi

3:23-CR-30-1

---

**BRIEF OF APPELLANT MARSHAND CRISLER**

---

SUBMITTED BY:

Joseph M. Hollomon
Joe M. Hollomon & Associates, P.A.
107 North State Street (39201)
Post Office Box 22683
Jackson, Mississippi 39225-2683
Tel: (601) 353-1300 | Fax: (601) 353-1308
Email:  jhollomon@outlook.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cɪʀ Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America | Jennifer Case of U.S. Attorney's Office Jackson, MS |
| United States of America | Charles Kirkham of U.S. Attorney's Office Jackson, MS |

| Appellants: | Counsel for Appellants: |
|---|---|
| Marshand Crisler | Joseph Hollomon of Joe M. Hollomon & Associates, P.A. Jackson, MS |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Defendant | John M. Colette, Esq. |
| | |
| | |

_s/Joseph M. Hollomon_
JOSEPH M. HOLLOMON (MSB #2551)
ATTORNEY FOR AND ON BEHALF OF
APPELLANT

# STATEMENT REGARDING ORAL ARGUMENT

The Appellee, Marshand Crisler, respectfully requests oral argument in this case.

# TABLE OF CONTENTS

Contents                                          Page(s)

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS ........................................................................................ iv

TABLE OF AUTHORITIES ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES..............................................................................3

STATEMENT OF THE CASE .................................................................................5

SUMMARY OF THE ARGUMENT .....................................................................10

ARGUMENT .........................................................................................................13

CONCLUSION ......................................................................................................23

CERTIFICATE OF SERVICE ..............................................................................24

CERTIFICATE OF COMPLIANCE .....................................................................25

# TABLE OF AUTHORITIES

Cases…………………………………………………..…………………Pages(s)

*Snyder v. United States,* 603 U.S. 1 (2024) …………………….…...…………12, 20

*Citizens United v. Federal Election Commission*, 558 U.S. 310, 331 (2010) …..…13

*United States v. Hudson*, 982 F.2d 160 (5ᵗʰ Cir. 1993) ………………………….. 14

*United States v. Mayfield*, 771 F.3d 417, 424 (7ᵗʰ Cir. 2014) (en banc) ......15, 16, 19

*Jacobson v. United States,* 503 U.S. 540 (1992) …………..…………………15, 16

*Sherman v. United States,* 356 U.S. 369 (1958) …………...…………...……...15, 17

*United States v. Alexander,* 681 F.App'x. 391, 395 (5ᵗʰ Cir. 2017) …..…………16

*United States v. Russell,* 411 U.S. 423, 433 (1973) …………………….……….16

*United States v. Byrd,* 31 F. 3d 1329, 1334 (5th Cir. 1994) …………………..……16

*United States v. Barta,* 776 F.3d 931, 933 (7th Cir. 2015) ………………………16

*United State v. Webster,* 649 F.2d 346, 349 (5th Cir. 1981) (en banc) ……………17

*United States v. Jackson,* 700 F.2d 181, 191) (5th Cir. 1983) ……...…………17, 19

*United States v. Fischel,* 686 F.2d 1082, 1083 (5th Cir. 1982) ………..………17, 19

*United States v. Melchor Moreno,* 536 F.2d 1042, 1051 (5th Cir. 1976) …………17

*United States v. Tomblin,* 46 F.3d. 1369, 1379 (5th Cir. 1995) ……………………18

*United States v. Hill,* 626 F.2d, at 1304 and n.4 …………………………..……19

*McDonnell v. United States,* 579 U.S. 550 (2016) ……………….……..……20

*McCormick v. U.S.*, 500 U.S. 257, 272 (1991) …………………………………21

*United States v. Hamilton*, 46 F.4th 389 (5th Cir. 2022) …………………………..21

**Statutes…………………………………………………………………… Pages(s)**

18 U.S.C. § 3742; 1291…………………………………………...…………...3

18 U.S.C. § 666(a)(1)(B) …………………………………...…...…...…………3, 5

18 U.S.C. § 922(d) ……………………………………………….………...3, 6, 9

18 U.S.C. § 924(a)(2) …………………….…...…………………...………..3,5, 6

18 U.S.C. § 666…………………………….………...………………...3, 5, 12, 21

# JURISDICTIONAL STATEMENT

This is an appeal in a criminal case from a final judgment of the United States District Court for the Southern District of Mississippi, Judge Tom S. Lee, presiding entered as to Marshand Crisler on February 11, 2024 (Sentencing transcript). This court's jurisdiction is invoked pursuant to 18, United States Code, §§ 3742 and 1291.

# STATEMENT OF THE ISSUES

This appeal is the result of Marshand Crisler's conviction for accepting a bribe in violation of Title 18, U.S. Code, § 666(a)(1)(B) as well as selling or disposing of ammunition to a convicted felon in violation of Title 18, U.S. Code, §§ 922(d) and 924(a)(2). The trial began on November 6, 2024, and was concluded on November 8, 2024. ROA.523[1]. At trial, the government's principal witness was a Hinds County, Mississippi political operative and convicted felon by the name of Tonarri Moore. ROA.219,227. Moore fell into the hands of the FBI as a result of a search of his home on September 14, 2021. ROA.227-28. The previous day, September 13, 2021, Marshand Crisler, then a candidate for Hinds County sheriff contacted Moore in the course of his campaigning. ROA.374,227. He asked Moore for his support and a campaign contribution. The following day, as a result of the raid on his home, an FBI agent appeared and while on the scene accessed Moore's phone. ROA.233. Seeing a call from Crisler the previous day, the FBI agent asked Moore "what Crisler

---

[1] "ROA.523" refers to page 523 of the Record on Appeal.

would do for money?  Are you bribing him?"  Moore responded that he was not. ROA.263. Ultimately the FBI agent asked "what Crisler would do if you gave him money? Would you, could you bribe him?" Moore responded, "let's see." ROA.263. Thus, with no predication the federal government began an effort to bribe Marshand Crisler. The very next day, the FBI wired Tonarri Moore up and set about inducing Crisler to accept campaign contributions which the government directed Moore to couple with requests from his constituent, Tonarri Moore. ROA.263-64. The total and complete lack of any predisposition for a bribery investigation of Marshand Crisler for accepting bribes or transferring ammunition to a convicted felon, was not an impediment to the eager government agent.  Crisler had no prior criminal history and was a highly educated individual who was teaching at Jackson State University and doing consulting work. ROA.362-68. Although the trial court was not initially inclined to give an entrapment instruction, ultimately an entrapment instruction was given to the jury. ROA.479. However, the defendant submits that Crisler's lack of predisposition when coupled with the inducement by the government in this case constitutes entrapment as a matter of law, and therefore the defendant's motion for a directed verdict as well as for a new trial were improperly denied by the trial court. ROA.359-60. The same is true with the last-minute effort by the government to ensnare Crisler by having him provide ammunition to Moore who was a convicted felon. ROA.243. Again, there was no predication for this and appeals to friendship,

sympathy, and the need for Moore's help in Crisler's campaign were a significant inducement for Crisler to relent and provide a few bullets to Moore.

At the time Moore provided the government money to Crisler as a campaign contribution, the government instructed Moore to make requests of Crisler in an effort to characterize the campaign contribution as a bribe. ROA.241-42. Moore was told to ask that a relative be moved from the Raymond Detention Center to medical or the adjoining lower security area known as the Hill; to offer Tonarri Moore a job; and to alert Moore if Crisler learned of information regarding Moore. None of these requests were the type of specific direct requests so as to constitute a quid pro quo, along with an official act which is necessary to establish bribery. Rather, these requests of Crisler were like requests constituents routinely make of candidates for political office. Our political system relies on interactions between citizens and politicians with requests being made for this or that which is within the power of the elected official to do. This does not constitute a bribery scheme. It is the normal working of our political system. For these reasons, the court erred in not granting the Defendant's motion for a directed verdict or for a new trial.

## STATEMENT OF THE CASE

Marshand Crisler was charged in a superseding indictment filed June 6, 2023, with accepting a bribe in violation of Title 18, U.S. Code, § 666(a)(1)(B) and selling or disposing of ammunition to a convicted felon in violation of Title 18, U.S. Code,

§ 922(d) and 924(a)(2). The case proceeded to trial on November 6, 2024. The government presented testimony from law enforcement personnel, as well as a confidential informant. After the government rested, Marshand Crisler took the witness stand and testified on his own behalf. Thereafter the defendant, through counsel, moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, which was denied. The jury returned a verdict of guilty on both counts on the afternoon of November 8, 2024. Crisler then filed a motion for judgment notwithstanding the verdict, which also was denied. A pre-sentence investigative report was prepared and on February 11, 2025, Marshand Crisler was sentenced to 30 months to serve as to Count one and 30 months to serve as to Count two with those sentences to run concurrently with each other. He was also ordered to pay a $200 assessment and a $15,000 fine. This appeal was timely filed.

In the fall of 2021 Marshand Crisler was employed as a professor in the political science department at Jackson State University, and at his own consulting firm.[2]

---

[2] By way of background, Crisler obtained an associate degree in criminal justice from Hinds Community College; a bachelor's degree in criminal justice from Jackson State University; a master's in public policy administration from Jackson State University, and at the time of the trial was working on a dissertation for his PhD in urban and regional planning. At 19 years of age Crisler enlisted in the Marine Corps and served four and a half years in that branch of service. In 1992 he was honorably discharged and entered the Army National Guard, later serving in Operation Desert Storm/Desert Shield. He attended Officer Candidate School at Camp Shelby and was later commissioned as a Second Lieutenant. He then served as a military police officer and was again deployed in Operation Iraqi Freedom. Returning home from Iraqi Freedom, Crisler transferred from the Army National Guard to the U.S. Air Force and was promoted to Major.

The chain of events that led to Crisler's conviction began with the September 14, 2021 DEA raid on the home of Tonarri Moore, an ambitious felon and political operative in Hinds County, Mississippi. The search of Moore's residence by the DEA uncovered firearms; nine grams of cocaine and marijuana.[3] Moore was obviously known to the arresting officers who quickly notified the FBI.  In fact, the FBI agent was so excited about Moore's arrest that he came to Moore's house where the search was being conducted.  The FBI agent pulled Moore aside and told him, "I need to talk to you after they finish the search".  The FBI agent went through Moore's telephone and noticed that Marshand Crisler had called him the previous day on September 13.  Crisler, who had been appointed as the interim Hinds County Sheriff, was attempting to raise money for his campaign for the office.  Moore had made contributions to Crisler's various campaigns for political office in the past and had assisted Crisler in those campaigns, so he reached out to Moore once again. Seeing Marshand Crisler's name and phone number in Tonarri Moore's telephone was all it took for the FBI agent to decide to target Crisler who was a candidate for Hinds County Sheriff.  Agreeing to cooperate with the FBI on the spot, Moore was not arrested or charged with being a convicted felon in possession of a firearm, or possession of illegal controlled substances.  Instead, the agent asked Moore what

---

Finally, he served as an operations officer for the 172nd Special Forces Squadron in Flowood, Mississippi.

[3] At the time, Moore had at least two felony convictions, one of which was for a prior sale of drugs.

Crisler would do for money.  Moore responded that he was **not** bribing Crisler for money.  He reiterated, "I'm not bribing nobody." The agent persisted asking Moore, "what would he do if you give him money? Would you, could you bribe him?" Moore responded, "Let's see." (R.I./263) And so it went from there, with the government wasting no time with the issue of predisposition to support a bribery investigation of Marshand Crisler.  That same day, Moore was directed to contact Marshand to set up a meeting.  The government, through Moore, contacted Marshand Crisler on September 14, 2021, and arranged a meeting between him and Tonarri for the express purpose of trying to bribe Marshand Crisler.  Apparently, this was all based on the simple fact that the FBI agent saw a call from Crisler the day before on Moore's phone.  On that call, Crisler asked Moore for his help on Crisler's campaign for Hinds County Sheriff.  Moore had contributed to Crisler's other campaigns in the past and had actively supported Crisler.

So now the government must manufacture something that Crisler could be asked to do for which the government could bribe him. Ultimately the government came up with three promises to ask of Crisler. First was to move Moore's cousin from the Hinds County Detention Center in Raymond to medical or the adjoining facility known as the Hill. The second request was for Crisler to get Moore a job and finally Moore wanted Crisler to provide intelligence information to him on law enforcement looking into Moore's activities. The FBI gave Moore $2,500.00 to

provide to Crisler as a campaign contribution and agreed to provide an additional $2,500.00 for a total of $5,000.00. Then, in a phone call with Crisler, Moore reported that Crisler requested a further campaign contribution of $2,000.00. During this conversation, at the direction of the FBI agent, Moore makes up a story about needing bullets to shoot a stray dog near his home. This bogus narrative was created because the FBI agent asked Moore if he thought Marshand would give him bullets. When asked for bullets, Crisler told Moore that he could purchase ammunition with no problem at Walmart, Van's, Bass Pro Shop, etc. However, when Moore continued to press him to provide the ammunition, ultimately Crisler did so. [4] This was not prohibited by State law.

The requests of Crisler by Moore as he was provided campaign contributions were not the type of specific, detailed requests that would constitute a quid pro quo which is necessary for a bribery conviction. Instead, the government's nebulous, open-ended requests were like those any political constituent might ask of a candidate for political office. It is not illegal for an elected official to solicit or accept campaign contributions from individuals who they know are motivated by general

---

[4] Apparently, Moore's FBI handlers were concerned about the validity of their alleged bribery of Crisler, so they concocted a story that Moore needed to shoot a stray dog around his home. Obviously, this was a ruse to endeavor to have facts which could support Crisler transferring possession of ammunition to a convicted felon in violation of Title 18, U.S. Code, Section 922(d). This effort to ensnare Crisler on the ammunition charge likely resulted from the fact that Crisler had not done any of the things which the government alleged he was being bribed to do. Moore's cousin had not been moved; Moore had not been hired, and Moore had not been provided information on anything that came across Crisler's desk.

gratitude toward them because of their position on issues or by a desire to ingratiate themselves or obtain access.  There was therefore no quid pro quo and no bribery.

## SUMMARY OF THE ARGUMENT

In September of 2021, Marshand Crisler who had been appointed to the position of interim Hinds County Sheriff, was running for the office.  On September 13, 2021, in the course of that campaign, Crisler contacted an old acquaintance who had contributed to and assisted on previous campaigns.  This individual was Tonarri Moore.  The following day, on September 14, 2021, DEA agents served a search warrant for the residence of Tonarri Moore and seized a number of firearms, nine grams of cocaine and a small amount of marijuana.  Moore was known to the FBI as a political operative in Hinds County. In fact, an FBI agent showed up on the scene at Moore's residence during the search and immediately sought Moore's cooperation in pursuing a bribery case against Marshand Crisler.  So, the prior convicted felon agreed to cooperate and was not charged with possession of the firearms or the drugs.  Although Moore flatly stated he was not bribing Crisler or anyone else, the agent asked, "what would Crisler do if you give him money?  Would you, could you bribe him?"  Moore's response was "Let's see."

With no predication for a bribery/sting type operation, the FBI next contrived what was to be the objective of the so-called bribery attempt.  It was determined that Moore would ask that his cousin be moved from the Hinds County Detention Center

in Raymond to medical or a less restrictive environment at the Hill; get Moore a job; and provide intelligence information regarding Moore that Crisler learned of. With a plan in place to ensnare Crisler, the FBI provided recording devices to Moore who was directed to contact Crisler and schedule a meeting with him to enact their plan.

In fact, the FBI wasted no time. The first meeting between Moore and Crisler took place that same day. In the meeting Marshand Crisler asked for $5,000.00 for his campaign. At their next meeting, Moore gave Crisler $2,500.00 as a campaign contribution provided by Agent Breedlove. Ultimately, Moore gave Crisler $9,500.00 total for Crisler's campaign for sheriff. None of the contrived requests were ever completed by Crisler. So, FBI Agent Breedlove and Moore concocted a story that Moore needed some bullets to shoot stray dogs around his house. Obviously, the Federal Agent was seeking to cause Crisler to violate the statute regarding transferring a firearm or ammunition to a prior convicted felon. When Moore followed Breedlove's instruction and asked Crisler to give him bullets, Crisler responded that he should go to Walmart, Bass Pro or Van's to purchase some ammunition. Moore responded that they were out of ammunition, so he needed Crisler to provide him with bullets. Once again, the government laid a trap and coaxed Crisler into it. There is absolutely nothing in the record to support a finding that Crisler had ever transferred or given possession of bullets or ammunition to a

felon before.  In other words, no predication whatsoever, but inducement from the government by appeals to sympathy, friendship and need.

Not only was there a total lack of predication, the alleged bribery objectives were the type of requests made of most any candidate for public office. First, the FBI instructed Moore to ask Crisler to move his cousin from the detention center in Raymond to medical or the adjoining facility known as the Hill.  Moore also asked Crisler for a job and asked that he provide information that came across his desk involving Moore.  To prove that Crisler was accepting a bribe, the government was required to show that Marshand Crisler committed (or agreed to commit) an "official act" in exchange for funds, which were provided to Crisler as a campaign contribution.

Crisler was charged with accepting a bribe in violation of Title 18, U.S. Code, Section 666. This statute prohibits state and local officials from accepting bribes that are promised or given before an official act. U.S. Code, Section 666 does not make it a crime for state and local officials to accept gratuities such as gift cards, lunches, plaques, books, framed photos, or the like that may be given as a token of appreciation after the official act. *Snyder v. United States,* 603 U.S. 1 (2024). Here, the objectives of the alleged bribery were the type of requests any political candidate or incumbent could expect from a supporter. The informant asked that Crisler move his incarcerated cousin to the Hill from the Raymond Detention Center; asked for a

job; and lastly, asked that Crisler provide information pertaining to Moore which came across his desk. Ingratiation or access are not corruption. Conscientious public officials arrange meetings for constituents, contact other officials on their behalf and include them in events all the time. *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). These are not specific requests or an explicit promise or undertaking by the official to perform or not to perform an official act. A generalized expectation of some future favorable action is not sufficient for a quid pro quo agreement. Further, Crisler was provided funds by the informant as a campaign contribution. There was absolutely no reason for Crisler to conclude that he was being bribed. Moore had contributed to his campaigns for public office in the past the same as he was doing here. Only here at the direction and insistence of the FBI, Moore seeks to characterize the campaign contributions as bribery. However, it is not illegal in and of itself for an elected official to accept campaign contributions on behalf of himself from individuals who the official knows are motivated by general gratitude toward him because of his position on issues or by desire to ingratiate themselves or obtain access to the public official. There was no quid pro quo and therefore no bribery.

## ARGUMENT

I.    **The Trial Court Erred in Denying Crisler's Motion to Dismiss at The Conclusion of The Government's Case Based on Entrapment as a**

**Matter of Law and in Denying His Motion for New Trial at the Close**

**of the Evidence for the Same Reason**

Crisler brings this appeal based on the jury's rejection of his entrapment defense. The standard of review is whether viewing the evidence in the light most favorable to the government, a reasonable jury could find beyond a reasonable doubt that Marshand Crisler was predisposed to commit the offense. See, *United States v. Hudson*, 982 F.2d 160 (5th Cir. 1993).

In September of 2021, following the death of the Hinds County Sheriff, Marshand Crisler was serving as interim Hinds County Sheriff and was in the race for election to that office for a full term.  During this time, Crisler was seeking campaign contributions and was actively campaigning daily.  In the course of campaigning, he contacted, among many others, an old acquaintance by the name of Tonarri Moore.  Moore was a Hinds County, Mississippi, political operative with a very shady background.  He had contributed to Crisler's campaigns for public office in the past.  On September 13, 2021, Crisler called Tonarri Moore seeking his political support as well as a political contribution for his campaign for Hinds County Sheriff.  The following day, September 14, 2021, the Drug Enforcement Administration, along with state agents, served a search warrant on Moore's residence.  During this search, drugs and firearms were recovered. Moore was at the time a prior convicted felon.  And although the search was conducted in the early

morning hours, an FBI agent soon arrived on the scene. He immediately began trying to recruit Moore to cooperate with the FBI by agreeing to work as an informant. While on the scene, the agent accessed Moore's cell phone and found that he had received a telephone call the previous day from Marshand Crisler. As interim Hinds County Sheriff and a candidate for that office, Crisler was an attractive high-level target for the FBI. The agent asked Moore on the scene if Crisler would accept a bribe. Moore responded, "Let's see." Obviously, there was no predication at the time to investigate Crisler in connection with bribes. In fact, Crisler had no criminal history whatsoever and a background of accomplishment in the academic and professional world. There simply was no reason to believe that Marshand Crisler was seeking a bribe or interested in transferring ammunition to a convicted felon. Because of this lack of predication or predisposition, coupled with the government's inducement, the case should be reversed and rendered on both counts of conviction because of Crisler's entrapment as a matter of law. The history of the entrapment defense is traced in the decision of *United States v. Mayfield*, 771 F.3d 417, 424 (7th Cir. 2014) (en banc). The modern doctrine of entrapment has largely been shaped by two Supreme Court decisions, both of which reversed convictions by finding entrapment as a matter of law. *Jacobson v. United States*, 503 U.S. 540 (1992); and *Sherman v. United States*, 356 U.S. 369 (1958). "The critical determination in an entrapment defense is whether a criminal intent originated with a defendant or with

government agents. The government may not 'implant in an innocent person's mind the disposition to commit a criminal act and then induce the commission of the crime so that the government may prosecute.'" *United States v. Alexander*, 681 F.App'x. 391, 395 (5th Cir. 2017) (quoting, *Jacobson*, 503 U.S. at 548). It is now recognized that "the defense of entrapment consists of two elements-government inducement and the defendant's lack of predisposition-with predisposition standing as the 'principal element.'" *Mayfield*, 771 F.3d at 427 (quoting, *United States v. Russell*, 411 U.S. 423, 433 (1973)). "When the government, by use of a sting operation or otherwise, had induced an individual to break the law, and the defense of entrapment is at issue, the prosecution must prove beyond a reasonable doubt that the defendant was inclined to commit the criminal act ***even before*** he was approached by government agents." *United States v. Byrd*, 31 F. 3d 1329, 1334 (5th Cir. 1994)[5]. Inducement "means" government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. *United States v. Barta*, 776 F.3d 931, 933 (7th Cir. 2015) (quoting, *Mayfield*, 771 F.3d at 434-35). The Fifth Circuit has clarified what this "conduct" may entail: "To constitute inducement, the government's conduct must go beyond mere solicitation,

---

[5] However, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the government may prosecute. *Jacobson*, 112 S. Ct. at 1535.

it 'must include an element of persuasion or mild coercion, such as misrepresentation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship.'" *United State v. Webster*, 649 F.2d 346, 349 (5th Cir. 1981) (en banc) (quoting, *United States v. Jackson*, 700 F.2d 181, 191) (5th Cir. 1983). The courts have regularly found inducement where a government agent or informant resorts to pleas based on need, sympathy, or friendship. In this case, we have all three. In *Sherman*, the informant's "resort to sympathy" based on his drug addiction helped establish that the government induced the defendant to sell illegal narcotics. 356 U.S., at 373; see also *Id.,* at 376 (condemning government effort that "plays on the weakness of an innocent party and beguiles him into committing crimes which he otherwise would not have attempted. Law enforcement does not require methods such as this."). The inducement need not overpower the defendant's will. *United States v. Fischel*, 686 F.2d 1082, 1083 (5th Cir. 1982) "The entrapment defense does not require proof of threats or coercion. It presupposes deceit, not force." *United States v. Melchor Moreno*, 536 F.2d 1042, 1051 (5th Cir. 1976). In this case, far from Marshand Crisler initiating contact with Tonarri Moore to solicit a bribe, it was Moore-looking to avoid responsibility and punishment for other crimes and who had fallen into the hands of the FBI-who was directed to meet with Crisler with the express intent of trying to bribe him. Simply put, nothing in

the record suggests Mr. Crisler would have offered anyone a bribe or provided ammunition to a convicted felon if left to his own devices.

The inducement in this case begins with what the government terms a bribe but was actually a campaign contribution. In fact, Moore had previously made campaign contributions to Crisler's campaigns and his contact with Crisler at the direction of the FBI was based on a call the day before from Crisler requesting help with his campaign for sheriff. Intending to make a campaign contribution does not constitute bribery, even though many contributors hope that the official will act favorable because of their contributions. See, *United States v. Tomblin*, 46 F.3d. 1369, 1379 (5th Cir. 1995). "Accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act." *Id.* In *Tomblin*, the court noted that "vague expectations of some future benefit should not be sufficient to make the payment a bribe."

The government also played on the past friendship between Crisler and Moore. They had known each other previously and Moore had contributed and worked for Crisler's other campaigns for public office. Because of this, and Crisler's need for campaign contributions and support, he was susceptible to Moore's and the government's scheme. The fact that Moore had previously given campaign contributions to Crisler made the campaign contribution in this case seem much

18

more like the support Moore had provided in the past than a bribe. The existing friendship between the two as well as Crisler's need for money for his campaign all provided inducement, which was manipulated by the government to entrap Marshand Crisler, a candidate for public office in Hinds County, Mississippi. Courts have noted there is a substantial risk of improper inducement when there is an element of persuasion or mild coercion, including appeals based on need, sympathy, or friendship. *United States v. Jackson*, 700 F.2d 181 (5th Cir. 1983) quoting *United States v. Hill*, 626 F.2d, at 1304 and n.4; cf. *United States v. Fischel*, 686 F.2d 1082, 1083 (5th Cir. 1982).

The second element which must be established for entrapment as a matter of law is predisposition. A predisposed person is one "who is 'likely to commit a particular type of crime without being induced to do so by government agents.'" *Mayfield*, 771 F.3d at 428-29. Put more succinctly, entrapment is the "the apprehension of a law-abiding citizen who, if left to his own devices, likely would never had run afoul of the law.

The accumulative effect of Crisler's lack of predisposition, coupled with the extensive inducement by the government, resulted in Crisler being lured by the government into a government orchestrated "bribery" attempt that is so outrageous based on the government's conduct that this court should find entrapment in this case as a matter of law.

II.     **The Trial Court Erred in Denying Crisler's Motion to Dismiss and Motion for a New Trial for Failure to Prove a Quid Pro Quo Bribery**

In September of 2021, Marshand was the appointed interim sheriff of Hinds County, Mississippi.  He was also in a political campaign in Hinds County running for a full-term position as the Hinds County sheriff.  He was actively campaigning daily and seeking support for the election.  When Tonarri Moore fell into the hands of the FBI, Crisler quickly became the target of a bribery investigation for which there was no proof of predisposition. Crisler at the time was 52 years of age, with no criminal history. He had a bachelor's degree; a master's degree; and was pursuing his doctorate in urban planning. He had held political office previously in addition to his teaching duties at Jackson State University and his work in consulting.  The prosecution of Crisler, a public official with a lengthy record of accomplishment and success, simply for engaging in the solicitation of campaign contributions from constituents and prior supporters, attempts to criminalize routine political exchanges in an effort to convict Crisler. Soliciting campaign contributions is not quid pro quo bribery. Prosecutions of public officials have targeted political practices that are invariably part of representative democracy and are frequently beneficial to the system.  Exchanges between public officials and constituents are integral to the political process and enhance the effectiveness of government. *McDonnell v. United States*, 579 U.S. 550 (2016); *Snyder v. United States*, 603 U.S. 1 (2024).

Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator. It is also true that campaigns must be run and financed. Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done. Whatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents… is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right." To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation. *McCormick v. U.S.*, 500 U.S. 257, 272 (1991).

The government, having concocted a bribery scheme to entrap Crisler, then had to contrive a corresponding quid pro quo to support the scenario with which to entrap him. Title 18, U.S. Code Section 666 criminalizes bribery, not gratuities. Further, Section 666 does require a quo. A quid alone will not suffice. *United States v. Hamilton*, 46 F.4th 389 (5th Cir. 2022). The quid pro quo or "asks" manufactured by the government in this case do not rise to the level of a quid pro quo and do not constitute bribery. Particularly in the context of this case, wherein the government was providing legitimate campaign contributions to a candidate for public office but attempting to characterize the campaign contributions as a quid pro quo

arrangement. However, a quid pro quo agreement also requires an official act.[6] The government first directed Tonarri Moore to ask that Crisler move his cousin from the Hinds County detention center in Raymond, Mississippi to medical. This ask, although never completed, did not require an official act by Crisler. Rather, this would have been a routine administrative action based on the medical needs or health of the respective individual, and Crisler told Moore as much. Next, the government directed Moore to ask that Crisler advise if his name came across Crisler's desk. Crisler testified that he understood this to be in reference to a job with the City of Jackson Moore had applied for. Crisler testified that he was under the impression that Moore was concerned because people were ignoring him, and that he was not able to get a job. Crisler understood this to mean that if an application came across his desk, he certainly would let Moore know that the process was moving forward. R.3/377-78. Again, no official act involved.

Lastly, the government alleged that Crisler corruptly agreed to award employment within the Hinds County Sheriff's office to Moore. Crisler testified that

---

[6] The superseding indictment specifically alleges that the quid pro quo consisted of the following: an agreement to pass information to Moore concerning criminal investigations of Moore; agreeing to protect a jailed family member of Moore; agreeing to award employment within the Hinds County Sheriff's Office to Moore and, lastly, agreeing to give more protection from arrests and prosecution if Moore was found to be in possession of a firearm. The testimony at trial from Moore focused only on his jailed family member being moved and the agreement to hire Moore by the Hinds County Sheriff's Office. None required an official act.

he did not take Moore seriously because he knew that he owned a nightclub in Jackson; he had seen him with $100,000 cash previously and he discussed providing a "loan" in the amount of $65,000 to the former Hinds County Sheriff, Victor Mason. R.3/380. At any rate, this did not pan out either and there was no official act taken.

For all the foregoing reasons the trial court erred in denying Crisler's Rule 29 Motion, as well as his Motion for a New Trial.

## CONCLUSION

Defendant respectfully requests that this Court reverse and render the convictions on both counts, as the record establishes a lack of predisposition and extensive inducement by the government, constituting entrapment as a matter of law.

Further, the efforts by the government to convert a campaign contribution to a bribe failed because there was no quid pro quo and no official act was requested nor taken by Crisler.

RESPECTFULLY SUBMITTED, this the 2nd day of August, 2025.

*s/Joseph M. Hollomon*
JOSEPH M. HOLLOMON (MSB #2551)
JOE M. HOLLOMON & ASSOC., P.A.
107 North State Street (39201)
Post Office Box 22683
Jackson, Mississippi 39225-2683
Tel: (601) 353-1300
Fax: (601) 353-1308
Email: jhollomon@outlook.com
joehollomonlaw@yahoo.com
ATTORNEY FOR AND ON BEHALF OF
APPELLANT

# CERTIFICATE OF SERVICE

I, Joe M. Hollomon, attorney for Appellant do hereby certify that I have this date electronically filed the foregoing pleading with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the Electronic Case Filing (ECF) system, which sent notification of such filing to all counsel of record

RESPECTFULLY SUBMITTED, this the 2nd day of August, 2025.

*s/Joseph M. Hollomon*

JOSEPH M. HOLLOMON (MSB #2551)
JOE M. HOLLOMON & ASSOC., P.A.
107 North State Street (39201)
Post Office Box 22683
Jackson, Mississippi 39225-2683
Tel:  (601) 353-1300
Fax: (601) 353-1308
Email:  jhollomon@outlook.com
joehollomonlaw@yahoo.com
ATTORNEY FOR AND ON BEHALF OF
APPELLANT

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1: this document contains 6312 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface Microsoft Word 365 in font size 14 and font type style Times New Roman.

RESPECTFULLY SUBMITTED, this, the 2nd day of August, 2025.

*s/Joseph M. Hollomon*
JOSEPH M. HOLLOMON